**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

DIEGO ALEJANDRO ORTIZ
FORERO,

    *Petitioner,*

v.

ACTING DIRECTOR OF
ENFORCEMENT AND REMOVAL
OPERATIONS, DETROIT FIELD
OFFICE, IMMIGRATION AND
CUSTOMS ENFORCEMENT, *et al.*,

    *Respondents.*

:
:
:
:
:
:
:
:
:
:
:
:
:

Case No. 1:26-cv-00103

Judge Jeffery P. Hopkins

---

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

---

Petitioner Diego Alejandro Ortiz Forero ("Petitioner" or "Mr. Forero"), a citizen and native of Colombia, is a United States Immigration and Customs Enforcement ("ICE") detainee currently detained at the Butler County Jail in Butler County, Ohio. Petitioner has filed a Petition for Writ of Habeas Corpus (Pet., Doc. 1) pursuant to 28 U.S.C. § 2241. Petitioner requests immediate release from detention or, in the alternative, to provide him with a bond hearing before an immigration judge. Pet., Doc. 1, PageID 12. Respondents filed a Return of Writ (Doc. 8), to which Petitioner replied (Doc. 9). The matter is now ripe for adjudication.

## I.    BACKGROUND

Mr. Forero entered the United States on April 23, 2024. Resp't Ex. A, Doc. 8-1, PageID 43. He is a 29-year-old citizen of Colombia with no criminal history. Resp't Ex. H, Doc. 8-8, PageID 73–75. After being paroled into the United States under 8 U.S.C. §

1

1182(d)(5)(A)[1] on June 10, 2024, Mr. Forero states that he has complied with all conditions of parole, worked as a machine operator in a factory, married a United States citizen, and attended all immigration hearings and ICE check-ins before being re-detained at a routine ICE appointment approximately five months ago back on January 14, 2026. Pet'r Ex. B, Doc. 1-2, PageID 15; Pet'r Ex. C, Doc. 1-3, PageID 16; Pet., Doc. 1, ¶¶ 3, 48, 54; Resp'ts Ex. H, Doc. 8-8, PageID 74. Mr. Forero filed his Petition for Writ of Habeas Corpus on February 2, 2026. Pet., Doc. 1. The Petition is properly before the Court.

## II.    LAW AND ANALYSIS

It is well settled that: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const., Art I, § 9, cl. 2. The constitutional guarantee of the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2) (emphasis added). To preserve the right of the people to obtain relief under this Clause, Congress enacted 28 U.S.C. § 2241. Section 2241 confers on federal district courts the power to issue writs of habeas corpus to persons held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241.

---

[1] The statute, in relevant part, provides the following: "The Secretary of Homeland Security may. . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A).

   A.   *Whether § 1225(b)(1) or § 1225(b)(2) is applicable*

As an initial matter, the parties disagree over which provision of 8 U.S.C. § 1225, which calls for the detention of certain non-citizens seeking admission into the United States, applies in Mr. Forero's case. Section 1225(b) creates two detention tracks for applicants seeking admission. *See* 8 U.S.C. § 1225. One track, § 1225(b)(1), covers the expedited removal process for certain applicants whom the Department of Homeland Security ("DHS") initially finds inadmissible for fraud, misrepresentation, or the lack of valid documents. *Make the Rd. New York v. Mullin*, No. 25-5320, 2026 WL 1792978, at *1 (D.C. Cir. June 23, 2026) ("As its name suggests, 'expedited removal' authorizes the rapid removal of certain aliens."); *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). By design, the "process operates on a short timeline." *Make the Rd. New York*, 2026 WL 1792978, at *2. The parallel track under § 1225(b)(2), is a "catchall" that applies to applicants seeking admission who are not subject to an expedited removal process but instead are placed in full removal proceedings with all the attendant quasi-judicial procedures. *Jennings*, 583 U.S. at 287 ("Aliens who are instead covered by § 1225(b)(2) are detained pursuant to a different process. Those aliens 'shall be detained for a [removal] proceeding' if an immigration officer 'determines that [they are] not clearly and beyond a doubt entitled to be admitted' into the country.").

Here, the record shows that DHS initially processed Mr. Forero under § 1225(b)(1). Resp'ts Ex. B, Doc. 8-2, PageID 47. On April 23, 2024, DHS issued a Notice and Order of Expedited Removal stating that he was inadmissible and removable "[p]ursuant to section 235(b)(1) of the Immigration and Nationality Act." *Id*. After Mr. Forero expressed a fear of return to Colombia, he was referred for credible-fear proceedings, and on May 13, 2024, an immigration judge determined that he had established a reasonable possibility of persecution

or torture. Resp't's Ex. D, Doc. 8-4, PageID 57. The immigration judge then vacated the removal order and returned the case "to DHS for DHS to commence removal proceedings." *Id*. Thereafter, DHS issued a Notice to Appear commencing Mr. Forero's removal proceedings under § 240. Resp't's Ex. A, Doc. 8-1, PageID 43.

After considering this history and the reasoning expressed in both *Jennings v. Rodriguez* and *Matter of MS*, the Court finds that Mr. Forero's current detention arises under § 1225(b)(1). Under § 1225(b)(1), an applicant for admission into the United States who begins in expedited removal and is later referred to § 240 proceedings after a positive credible fear determination remains in detention under § 1225(b)(1). *See Jennings*, 583 U.S. at 281*; Matter of M-S*, 27 I&N Dec. 509, 516–18 (A.G. 2019); *Yun Qui v. Maydak*, No. cv 26-199-DLB, 2026 WL 1814835, at *2–4 (E.D. Ky. June 24, 2026); *Paredes Padilla v. Galovich*, No. 25-cv-865-JDP, 2025 WL 3640960, at *3 (W.D. Wis. Dec. 16, 2025) (noting that "§ 1225(b)(1)(B)(ii) mandates detention for all aliens transferred from expedited removal into asylum proceedings").

### B.  Fifth Amendment Due Process Considerations

Though § 1225(b) mandates detention, the statute does not foreclose this Court's consideration of whether Mr. Forero's continued confinement violates the Constitution's Due Process Clause. *See Jennings*, 583 U.S. at 312; *Azalyar v. Raycraft*, 814 F. Supp. 3d 926, 931 (S.D. Ohio 2026). Accordingly, the Court turns now to the question of whether Mr. Forero's detention complies with the Fifth Amendment's requirement of due process. Mr. Forero raises his due process argument under *Mathews v. Eldridge*, 424 U.S. 319 (1976), and this Court's decision in *Azalyar*, 814 F. Supp. 3d at 935. Pet., Doc. 1, ¶¶ 9, 30; Doc. 9, PageID 79. Respondents, on the other hand, contend that Mr. Forero's confinement is constitutionally permissible under *Mathews*. Doc. 8, PageID 39. In making the determination of whether an

applicant's continued detention violates due process, courts have typically used a three-part test best summarized perhaps as follows: "Under *Mathews*, the Court must consider the following three factors: (1) the private interest that will be affected by official action; (2) the risk of erroneous deprivation of that interest; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures entail." *Yac Pastor v. Raycraft*, 817 F. Supp. 3d 546, 559 (W.D. Mich. 2025).

The first *Mathews* factor strongly favors Petitioner. It is hard to imagine a more salient private interest affected by an official action than one that impacts personal freedom. As this Court has recently held, "individuals paroled from civil immigration custody have a protectable liberty interest in remaining so." *Azalyar*, 814 F. Supp. 3d at 933. Other courts have likewise recognized that "one of the 'most elemental of liberty interests' is to be free from detention." *Pablo-Mendoza v. Lynch*, 820 F. Supp. 3d 673, 684 (W.D. Mich. 2026) (citation omitted). Here, there can be no serious dispute that Mr. Forero is "experiencing [many of] the deprivations of incarceration, including loss of contact with friends and family, loss of income earning, . . . lack of privacy, and, most fundamentally, the lack of freedom of movement." *Rodriguez v. Noem*, 812 F. Supp. 3d 751, 762 (W.D. Mich. 2025) (quoting *Gunaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025)).

Indeed, the letter received by the Court from Mr. Forero's wife on June 10, 2026, describes in detail the toll that his continued detention has had on both she and Mr. Forero. In it, she relates how Mr. Forero, until his arrest and detention five months ago, had been the primary provider for their household during the couple's first year of marriage. By contrast, Mr. Forero's status as a detainee has caused him to be separated from his wife, community, and friends, deprived him of employment and privacy, and has most fundamentally taken

away his freedom of movement. Before, while on parole, Mr. Forero enjoyed freedom to move about under the conditions of parole prescribed by immigration authorities, which he assiduously adhered to. The Court finds that Mr. Forero has a protectable liberty interest in remaining free from continued confinement, given his consistent compliance with all the conditions of parole. He has no criminal history and has stable employment as a machine operator in a factory, and he is married to a United States citizen. Moreover, he has without fail attended all his scheduled immigration hearings and ICE check-ins. Pet'r Ex. C, Doc. 1-3, PageID 16; Pet., Doc. 1, ¶¶ 48, 54; Resp'ts Ex. H, Doc. 8-8, PageID 74. To be free from detention is, under our nation's longstanding constitutional norms, "one of the 'most elemental of liberty interests.'" *Pablo-Mendoza*, 820 F. Supp. 3d at 684. Given the circumstances presented in this case, Mr. Forero's re-detention simply does not square with those fundamental ideals and traditions embedded in our Constitution.

The second factor also weighs in Mr. Forero's favor. Importantly, as noted, "[c]ivil immigration detention must be 'nonpunitive in purpose' and bear a 'reasonable relation' to the authorized statutory purposes of preventing flight and danger to the community." *Azalyar*, 814 F. Supp. 3d at 934 (citation omitted). Here, Mr. Forero's current detention shows signs suggestive of him being unreasonably deprived of freedom for a purpose other than to prevent risk of flight and danger to the community. After five months of detention, Mr. Forero's confinement has begun to take on a purpose that appears more punitive in nature than nonpunitive in character. *Id.* By all accounts, Mr. Forero lacks any appearance of needing to be detained to prevent him from absconding, nor does he appear to pose any threat to the community where he once lived with his spouse in a stable marriage with steady income from the job he maintained which he used to support them both. Pet'r Ex. C, Doc. 1-3, PageID 16;

6

Pet., Doc. 1, ¶¶ 48, 54; Resp'ts Ex. H, Doc. 8-8, PageID 73–75. To the contrary, the record reveals that he had very strong community ties, no criminal history, and a history of compliance with all immigration proceedings and ICE check-ins before being detained. *Id.* Under the circumstances, Mr. Forero's continued confinement creates a significant risk that he is being unreasonably deprived of liberty and that his continued confinement is more punitive than nonpunitive in purpose. Pet., Doc. 1, ¶ 50.

Turning next to the third factor, the Government's interest, including the fiscal and administrative burdens that the additional or substitute procedures entail, the Court again finds Mr. Forero's arguments more persuasive. Arguably, before he was detained, much of the financial and administrative burden fell on Mr. Forero to comply with his parole. More than likely, Mr. Forero had to take off from work as an hourly employee in his position as a machine operator to regularly appear at ICE offices for check-ins. Despite these inconveniences, Mr. Forero remained compliant with all his parole conditions.

The costs, both in terms of the expense and administrative burden the Government incurred overseeing Mr. Forero's parole during this period, were more likely than not de minimis. By comparison, providing Mr. Forero with an individualized custody determination would impose only modest additional administrative and financial burdens on the Government. *See Pablo-Mendoza*, 820 F. Supp. 3d at 684 ("[C]ontinuing to enforce Petitioner's detention would likely impose more costs upon the Government, as it would be required to continue funding and overseeing Petitioner's detention."). Compared to the weight of the liberty interest at stake and the substantial risk of further prolonging Mr. Forero's detention unreasonably in the face of strong evidence showing him to be no risk of flight or danger to the community, the Court believes the liberty interests of the individual should take

precedence over the slightly higher administrative costs that *might* be incurred by the Government under the Due Process clause of our Constitution. Taken together, these factors all establish that the *Mathews* test favors Mr. Forero. The Court therefore holds that his current detention violates the Due Process Clause of the Fifth Amendment.

### III.    CONCLUSION

For these reasons, it is **ORDERED** that Mr. Forero's constitutional claim challenging his civil immigration detention be **GRANTED**. It is further **ORDERED** that Respondents shall **PROVIDE** Petitioner with an *individualized* bond hearing before an immigration judge within 7 calendar days of the date of this Order at which time the Government shall bear the burden to demonstrate, by clear and convincing evidence, that Mr. Forero is a danger to the community or a flight risk or immediately **RELEASE** him under the previous conditions of parole which existed prior to his detention.

**IT IS SO ORDERED.**

July 2, 2026

Jeffery P. Hopkins
United States District Judge

8